UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILLIP H. OWENS,

                        Plaintiff,

     v.

THE COUNTY OF MONROE,

                        Defendant.
_____

**DECISION AND ORDER**

6:21-CV-6445 FPG CDH

# INTRODUCTION

    Plaintiff Phillip H. Owens ("Plaintiff") asserts a claim against defendant the County of Monroe ("Defendant") pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (Dkt. 1). Plaintiff specifically alleges that Defendant "maintained a practice and custom not to reprimand or discipline assistant district attorneys in connection with *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] violations and presentation of false or misleading argument, evidence and testimony at trial." (Dkt. 1 at ¶ 208).

    Currently pending before the Court is Plaintiff's motion to unseal the contents of the Monroe County District Attorney's Office's ("MCDAO") files and grand jury materials related to eight New York state cases. (Dkt. 38; *see* Dkt. 38-1 at 9-10). Defendant opposes Plaintiff's motion. (*See* Dkt. 39; Dkt. 52). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

**I.     Factual Background**

The following facts are taken from Plaintiff's complaint (Dkt. 1), and have been "accepted as true" by Defendant for purposes of the instant motion (Dkt. 13 at 1 n.1).

On May 31, 2012, Plaintiff's estranged wife Tara Owens reported to police that while she waited at an intersection in Rochester, New York, Plaintiff fired a gun at her and their three-year-old son from a convenience store. (Dkt. 1 at ¶¶ 17-24; Dkt. 13 at 1-2). Surveillance video, however, failed to show the shooting and contradicted the prosecution's narrative of the case. (Dkt. 1 at ¶¶ 28-30; Dkt. 13 at 2). Additionally, Ms. Owens recanted her report to the police. (Dkt. 1 at ¶ 41; Dkt. 13 at 2). Ultimately, Plaintiff was convicted of attempted assault in the first degree, two counts of criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. (Dkt. 1 at ¶ 98; Dkt. 13 at 3). After the trial, Plaintiff's motion to set aside the verdict was denied. (Dkt. 1 at ¶¶ 106; Dkt. 13 at 3).

Subsequently, the New York Supreme Court, Appellate Division reversed Plaintiff's conviction and remanded the case for a new trial. (Dkt. 1 at ¶ 114; Dkt. 13 at 4). At Plaintiff's second trial, Ms. Owens refused to testify, asserting her Fifth Amendment right against self-incrimination. (Dkt. 1 at ¶¶ 124-28; Dkt. 13 at 4). Having lost the testimony of this key witness, the MCDAO conveyed it could not proceed, and the state trial court issued a trial order of dismissal on June 13, 2018, leading to Plaintiff's release from jail. (Dkt. 1 at ¶ 129; Dkt. 13 at 4).

## II.     **Procedural Background**

This matter has been referred to the undersigned for all non-dispositive pretrial proceedings.  (*See* Dkt. 15; Dkt. 40).

Plaintiff commenced this action on June 13, 2021.  (Dkt. 1). District Judge Frank P. Geraci, Jr., granted in part Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiff's claims that Defendant had a *de facto* policy of (1) refusing to disclose *Brady* material and presenting false and misleading evidence and testimony at trial, and (2) of training and "directing trial prosecutors to not take notes when interviewing prosecution witnesses, or being deliberately indifferent to such practice, so as to deprive defendants of exculpatory evidence." (Dkt. 13 at 6-7).  Judge Geraci concluded that Plaintiff sufficiently pled a *Monell* claim based on a failure to discipline, because he plausibly alleged that "Defendant was on notice of misconduct and failed to investigate and discipline the misconduct . . . [and] it [was] reasonable to infer that a failure to discipline prosecutors in connection with prosecutorial misconduct, including the failure to disclose *Brady* information, would cause constitutional violations." (Dkt. 13 at 10-11).

On September 19, 2023, Magistrate Judge Marian W. Payson, to whom the matter was then referred, entered a Stipulated Protective Order. (Dkt. 28). The Stipulated Protective Order provides for the designation of documents as "Confidential" and "Highly Confidential," and provides relevant protections for appropriately designated documents. (*Id.*).

- 3 -

On November 22, 2024, Plaintiff filed the instant motion to "unseal the complete contents of the District Attorney's file[s] in" the cases of *People v. Fisher*, 18 N.Y.3d 964 (2012), *People v. Flowers*, 151 A.D.3d 1843 (4th Dep't 2017), *People v. Gibson*, 134 A.D.3d 1512 (4th Dep't 2015), *People v. Jones*, 134 A.D.3d 1588 (4th Dep't 2015), *People v. Griffin*, 125 A.D.3d 1509 (4th Dep't 2015), *People v. Presha*, 83 A.D.3d 1406 (4th Dep't 2011), *People v. Valentin*, 1 A.D.3d 982 (4th Dep't 2003), and *People v. Fields*, Indictment No. 2009-0864 (Feb. 17, 2010) (collectively, the "Cases"). (Dkt. 38).

On December 23, 2024, Defendant filed its opposition. (Dkt. 39). Plaintiff filed a reply on January 13, 2025. (Dkt. 41). The Court held oral argument on February 11, 2025, at which time Plaintiff's counsel advised that Plaintiff was also seeking to unseal grand jury materials related to the Cases. (*See* Dkt. 44). At the request of Defendant, the Court ordered supplemental briefing on this issue. Plaintiff filed his supplemental brief on March 22, 2025 (Dkt. 49), and Defendant filed its response on April 4, 2025 (Dkt. 52). Plaintiff did not file a reply.

## DISCUSSION

### I. Request to Unseal Criminal Files

#### A. Legal Standard

New York Criminal Procedure Law ("CPL") § 160.50 provides that "[u]pon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed." N.Y. CPL § 160.50(1). "The primary purpose of the sealing of records pursuant to § 160.50 is to ensure

confidentiality and to protect . . . individual[s] from the potential public stigma associated with a criminal prosecution." *Lehman v. Kornblau*, 206 F.R.D. 345, 347 (E.D.N.Y. 2001). Relatedly, New York Civil Rights Law ("CVR") §50-b provides that "the identity of any victim of a sex offense . . . shall be confidential" and "[n]o . . . public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim," subject to delineated exceptions. N.Y. CVR § 50-b(1).

"[W]hen a plaintiff sues in federal court to vindicate federal civil rights, New York state law does not govern discoverability and confidentiality[.]" *Howard v. City of Rochester*, 758 F. Supp. 3d 109, 121 (W.D.N.Y. 2024) (quotation omitted); *see also Crosby v. City of N.Y.*, 269 F.R.D. 267, 274 (E.D.N.Y. 2010) ("[I]n cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law."). Nevertheless, "[i]n the interest of comity, [federal] courts should attempt to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Manzi v. DiCarlo*, 982 F. Supp. 125, 131 (E.D.N.Y. 1997) (quotation omitted); *see also Coleman v. Cnty. of Suffolk,* 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016), *aff'd*, 685 F. App'x 69 (2d Cir. 2017). "[T]he policies underlying state evidentiary privileges must . . . be given serious consideration, even if they are not determinative," *Crosby*, 269 F.R.D. at 274, yet cannot be allowed "to frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983," *Lehman*, 206 F.R.D. at 348

(quotation omitted). The Court must therefore "balance the deference to be accorded state-created privileges with the need for the information sought to be protected by the privilege." *Crosby*, 269 F.R.D. at 275.

District courts in this Circuit have had occasion to address access to sealed state records during discovery in actions under § 1983. *See, e.g., Lehman*, 206 F.R.D. at 347 (addressing documents sealed pursuant to CPL § 160.50 in response to the plaintiff's motion to compel); *Woodard v. City of N.Y.*, No. 99 CV 1123(ILG), 2000 WL 516890, at *1-4 (E.D.N.Y. Mar. 10, 2000) (addressing documents sealed pursuant to § 160.50 and explaining that "[d]istrict courts presented with the issue have found that it is within their power to issue an order compelling production of files in the custody of the district attorney and sealed pursuant to C.P.L. § 160.50"). In such cases, "district courts do possess the authority to unseal state criminal records in the possession of a state district attorney, when the records are relevant to the federal lawsuit and 'the district attorney moves to quash a subpoena, or objects to a discovery demand.'" *K.A. v. City of N.Y.*, No. 16-CV-4936 LTSKNF, 2022 WL 1063125, at *2 (S.D.N.Y. Apr. 8, 2022) (quoting *Lehman*, 206 F.R.D. at 347); *see also Bertuglia v. City of N.Y.*, No. 11 Civ. 2141 JGK, 2014 WL 626848, at *1 (S.D.N.Y. Feb. 18, 2014) ("[W]hen the district attorney objects to a discovery demand, it is within the power of the district court to issue an order compelling production.").

**B.   Compliance with Local Rule 7**

As an initial matter, Defendant argues that Plaintiff's motion "should not be heard under the Local Rules of Civil Procedure because Plaintiff has not submitted

an affidavit showing a sincere attempt to resolve this discovery dispute." (Dkt. 39 at 5). Defendants cite particularly to Local Rule 7, which provides that "[n]o motion for discovery and/or production of documents under Fed. R. Civ. P. 37 shall be heard unless accompanied by an affidavit showing that sincere attempts to resolve the discovery dispute have been made. Such affidavit shall detail the times and places of the parties' meetings or discussions concerning the discovery dispute and the names of all parties participating therein, and all related correspondence must be attached." Loc. R. Civ. P. 7(d)(3).

The Court has broad discretion in applying its Local Rules. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("[T]he district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked."), *superseded by rule on other grounds*, Fed. R. Civ. P. 5(d)(4) & 83(a)(2). Here, the Court in its discretion excuses Plaintiff's non-compliance with Local Rule 7(d)(3).[1] The record in this case adequately demonstrates Plaintiff's attempts to resolve this matter without needing the Court's intervention. Specifically, on October 28, 2024, the parties submitted a joint letter request seeking a Court conference to discuss a briefing schedule with respect to an anticipated motion to unseal. (Dkt. 34). Magistrate Judge Marian W. Payson, to whom the matter was then referred, entered an Order instructing the parties to submit a proposed briefing schedule in lieu of a

---

[1] The Court is unpersuaded by Plaintiff's argument that "no violation of Local Rule 7(d)(3) has occurred[.]" (Dkt. 41 at 12). Local Rule 7(d)(3) unequivocally requires the filing of an affidavit detailing the times and places of the parties' meetings or discussions concerning the discovery dispute and no such affidavit was filed in connection with the instant motion.

- 7 -

conference. (Dkt. 35).

Moreover, and as discussed at oral argument, the relief sought by Plaintiff—unsealing of the files in the Cases—is not within defense counsel's authority to grant absent a Court order, and the parties had reached an impasse regarding the necessity of the requested documents. Under the circumstances, the Court does not find that denying the motion for failure to comply with Local Rule 7(d)(3) would be in the interests of justice, and it declines to do so. However, Plaintiff's counsel is advised that the Court anticipates full compliance with the Local Rules going forward.

### C.  Unsealing of Certain Case Files is Warranted

In his motion, Plaintiff seeks "unsealing [of] the complete contents of the District Attorney's files" for the Cases (Dkt. 38; Dkt. 38-1 at 9-10) on a "partial, limited, non-public basis only for use by the parties in this federal civil rights lawsuit" (Dkt. 38-1 at 6) and "the related lawsuit *Howard v. City of Rochester, et al*[.], 23-cv-6561 where the parties are litigating a very similar *Monell* claim and have agreed to share and used discovery exchanged in this case" (*id.* at 6 n. 2, 22 n. 3). Plaintiff argues that the requested files relate to "cases where convictions were overturned on appeal due to prosecutorial misconduct [and that they] are directly relevant to Plaintiff's federal civil rights claim[] concerning misconduct by prosecutors in the [MCDAO] and the indifference of [Defendant] to such misconduct[.]" (*Id.* at 4; *see* Dkt. 38-2 at ¶ 4; Dkt. 41 at 5). Additionally, he argues that these files "are essential to

enable Plaintiff to prepare effectively for [] depositions and establish his *Monell* claim[]." (Dkt. 38-1 at 6, 20; Dkt. 38-2 at ¶ 4; Dkt. 41 at 5-7).

Plaintiff has a strong interest in obtaining records relevant to his § 1983 claim. *See Howard*, 758 F. Supp. 3d at 123 ("[T]here is surely a strong federal interest in giving [a plaintiff] the chance to bring his civil rights claims under Section 1983."). Further, the nature of Plaintiff's surviving claim necessarily means that he must look at the MCDAO's conduct in other cases to establish a pattern of unconstitutional activity. *See Treadwell v. County of Putnam*, No. 14-cv-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) (a party proceeding on a theory of failure to supervise or discipline must establish "(1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations") (citations omitted). These are precisely the kind of circumstances in which rote application of state privacy laws would frustrate the substantive federal policy embodied by § 1983.

Defendant argues at length that Plaintiff has failed to show that the requested files will contain relevant information. (*See* Dkt. 39 at 8-9; Dkt. 39-1 at ¶¶ 2, 8). However, the Court finds that Plaintiff adequately explains in his motion why some of the requested records fall within the scope of allowable discovery. Plaintiff persuasively contends that "tak[ing] depositions of prosecutors who handled cases that were reversed on appeal due to prosecutorial misconduct . . . will be critical to establishing the [MCDAO's] pattern of failing to supervise and discipline and its deliberate indifference to misconduct." (Dkt. 38-1 at 4-5). More particularly, the

sealed files related to the Cases that were overturned on appeal are needed for depositions, because Plaintiff must verify the evidence they contain regarding supervision and contemporaneous handling of prosecutorial conduct and of post-appeal discipline. (*See* Dkt. 38-1 at 13-14). Plaintiff believes the "files likely contain internal communications, notes, and other documentation showing what guidance, if any, was provided by supervisors" during the pertinent prosecutions. (Dkt. 38-1 at 14, 17, 20). Regarding his claim, Plaintiff posits that the records "likely contain . . . crucial evidence that will support Plaintiff's *Monell* claim that the [MCDAO] fails to appropriately monitor, supervise and discipline trial prosecutors." (Dkt. 38-1 at 19, 20; Dkt. 38-2 at ¶ 4; Dkt. 41 at 5).

These arguments, weighed against the important privacy interests protected by §§ 160.50 and 50-b, tip the balance in favor of disclosure. Defendant's legitimate concerns regarding the privacy of non-parties involved in the Cases (*see* Dkt. 39 at 6-7) do not outweigh the relevance of the case files sought here, particularly given the protections of the Stipulated Protective Order. *See Fleming v. City of N.Y.*, No. 18-CV-4866 GBDJW, 2023 WL 1861223 at *3 (S.D.N.Y. Feb. 9, 2023) ("The City's privacy concerns on behalf of non-party inmates do not outweigh the relevance of and Plaintiff's need for the information requested during discovery considering the parties' Confidentiality Stipulation and Proposed Protective Order which relieves such concerns." (internal citation omitted)).

As courts in this Circuit have held, "[t]he primary purpose of the sealing of records pursuant to §160.50 is to . . . protect the individual from the potential *public*

stigma[.]" *Lehman*, 206 F.R.D. at 347 (emphasis added); *see also MacNamara v. City of N.Y*, No. 04Civ.9612(KMK)(JCF), 2006 WL 3298911, at *4 (S.D.N.Y. Nov. 13, 2006) (finding that "the privilege created by CPL § 160.50 must yield" in a case where the plaintiffs did not "seek to contact non-party arrestees," but instead to obtain documents relevant to their claims that they had been targeted for baseless arrests). Considering Plaintiff's agreement that any unsealed documents would be non-public and subject to the Stipulated Protective Order (*see* Dkt. 38-1 at 21-22; Dkt. 41 at 7)[2], unsealing the case files sought by Plaintiff is consistent with both the primary purpose of §§ 160.50 50-b and "federal interests in broad discovery and truth-seeking." *Crosby*, 269 F.R.D. at 274 (internal citations omitted). The third-party privacy interests articulated by Defendant are adequately protected by the Stipulated Protective Order, which provides that information designated "Highly Confidential" shall be "for 'attorneys' eyes only' and shall not be released or disclosed in any manner to any other person, including Plaintiff." (Dkt. 28 at ¶ 5.3).

Defendant's argument that the files are not relevant because many of the Cases involve summation misconduct is unpersuasive. (*See* Dkt. 39 at 9). Judge Geraci held that Plaintiff sufficiently pled his claim in part because he demonstrated that "Defendant was on notice of misconduct and failed to investigate and discipline

---

[2] Plaintiff seems to suggest that the documents would appropriately be designated "Confidential" under the Stipulated Protective Order. (*See* Dkt. 38-1 at 6 ("[T]he files can be marked as confidential to protect privacy interests.")). However, the Court finds that these documents are appropriately designated "Highly Confidential," which the Stipulated Protective Order defines to include material "that contains sensitive information and/or identifying personal information pertaining to . . . third-parties[.]" (Dkt. 28 at ¶ 5.3).

[prosecutorial] misconduct . . . [and] it [was] reasonable to infer that a failure to discipline prosecutors in connection with prosecutorial misconduct, . . . would cause constitutional violations." (Dkt. 13 at 10-11). Plaintiff correctly points out that his claim concerns an overarching pattern of unconstitutional acts by the MCDAO that extends beyond the particular prosecutor or administration involved in his case. (Dkt. 41 at 9-10; *see* Dkt. 1 at ¶¶ 171-89). Further, the claim on which Plaintiff was permitted to proceed in this case is not limited to failure to discipline for *Brady* violations, but is also for failure to discipline for "present[ing] false or misleading argument, evidence and/or testimony at trial." (Dkt. 1 at ¶¶ 6, 204). It is reasonable under these circumstances to conclude that cases involving summation misconduct could be relevant to Plaintiff's claim.

The Court is further unpersuaded by Defendant's argument that Plaintiff was required to pursue "more relevant and direct discovery which could show that the sealed files are not needed." (Dkt. 39 at 11). Defendant has cited no authority in support of this argument, and it is not the Court's function to instruct counsel as to the priority that should be given in seeking relevant discovery. Plaintiff is entitled to formulate and pursue what he deems to be the most effective discovery strategy with respect to his claims, within the bounds of the Federal Rules of Civil Procedure and other applicable laws. The Court will not deny Plaintiff's motion on this basis.

However, the Court declines to order unsealing of the records associated with all the Cases. The Court observes that only five of the Cases involve overturned

convictions.³ *Compare Flowers*, 151 A.D.3d at 1844 (finding summation misconduct but "nevertheless conclud[ing] that reversal [wa]s not mandated"); *Valentin*, 1 A.D.3d at 983 (upholding defendant's conviction because "there [wa]s no reasonable probability that the verdict would have been different had the material been disclosed") (quotation and citations omitted); *with Fisher*, 18 N.Y.3d at 967 (finding summation misconduct and reversing the defendant's convictions); *Gibson*, 134 A.D.3d at 1513 (finding summation misconduct and reversing one of the defendant's convictions); *Jones*, 134 A.D.3d at 1589 (finding summation misconduct and reversing the defendant's conviction); *Griffin*, 125 A.D.3d at 1511 (finding summation misconduct and reversing the defendant's conviction); *Presha*, 83 A.D.3d at 1408 (admonishing the prosecutor for summation misconduct and reversing the defendant's convictions). For instance, while Plaintiff argues that he requires the case file for *Valentin* because the matter "was reversed due to a *Brady* violation similar to the one in this case" (Dkt. 38-1 at 5, 15), the court in *Valentin* in fact held that while the "the failure of the People to disclose the prior convictions of the sole eyewitness violated their obligations under Brady," the defendant's conviction should be upheld

---

³ The Court has been unable to locate a written decision for "People v. Fields, Indictment No. 2009-0864 (Feb. 17, 2010)" (the "*Fields* Indictment") which is listed as one of the Cases. (Dkt. 38; *see* Dkt. 38-1 at 15). Plaintiff asserts that this is a case in which an assistant district attorney "presented false testimony . . . during a suppression hearing, leading to the court granting the defendant's motion to suppress evidence." (Dkt. 38 at 2). There is no evidence in the record before the Court that the *Fields* Indictment involves an overturned conviction. Accordingly, the Court declines to order unsealing of the *Fields* Indictment file.

because "there [wa]s no reasonable probability that the verdict would have been different had the material been disclosed." *Valentin*, 1 A.D.3d at 983.

Plaintiff's arguments in connection with his motion are expressly premised on his contention that "the critical issue is not the specific type of misconduct but rather the County's failure to investigate or discipline prosecutors *after appellate courts found reversible misconduct.*" (Dkt. 41 at 9 (emphasis added); *see also id.* at 9-10 ("Judge Geraci here specifically found that Plaintiff plausibly alleged a pattern of similar unconstitutional activity—namely, the MCDAO's systemic failure to supervise and discipline prosecutors after courts found reversible misconduct. The County's attempt to distinguish between different types of prosecutorial misconduct ignores Judge Geraci's recognition that the critical issue is the office's broader pattern of failing to address constitutional violations, regardless of their specific form.")). Under these circumstances, Plaintiff has not demonstrated that relevant information will be found in cases not involving reversed convictions.

Consequently, the Court orders unsealing only with respect to the files related to cases involving overturned convictions—specifically, *Fisher*, *Presha*, *Gibson*, *Jones*, and *Griffin*. The MCDAO's files as to these five cases shall be unsealed, marked "Highly Confidential" in accordance with the Stipulated Protective Order, and disclosed to Plaintiff's counsel no later than 30 days from entry of this Decision and Order.[4] (*See* Dkt. 28 at ¶ 5.3). This resolution comports with Plaintiff's own

---

[4]     Defendant's concerns that "the individuals who [the Cases] were sealed in favor of have not been given notice and afforded the opportunity to participate in this motion which seeks to abrogate their privacy rights[]" (Dkt. 39 at 13) can be addressed

description of the Cases and the underlying facts of his case, and "balance[s] the deference to be accorded [§§ 160.50 and 50-b] with the need for the information sought to be protected by the privilege." *Crosby*, 269 F.R.D. at 275 (citation omitted).

### III. Request for Unsealing of Grand Jury Materials

#### A. Legal Standard

Under New York law, "[g]rand jury proceedings are secret" and may not be disclosed except "upon written order of the court." N.Y. CPL § 190.25(4)(a); *see In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997). A party must show a "particularized need" for disclosure of such materials in federal court. *Anilao v. Spota*, 918 F. Supp. 2d 157, 173 n.5, 176-83 (E.D.N.Y. 2013) (citation omitted) (ordering disclosure of grand jury material where state court had issued writ of prohibition against further prosecution of the indictment and where plaintiffs identified specific instances of alleged misconduct before the grand jury); *see also Frederick v. N.Y.C.*, No. 11 CIV. 469 JPO, 2012 WL 4947806, at *10, *14 (S.D.N.Y. Oct. 11, 2012) (ordering *in camera* review of one witness' grand jury testimony where a party "adduced and corroborated facts that strongly suggest misconduct at the grand jury sufficient to defeat the presumption of probable cause"). To make a showing of particularized need, "the party seeking grand jury material must show (1) that the material they seek is needed to avoid a possible injustice in another judicial

---

by the protections afforded by the Stipulated Protective Order. *See MacNamara*, 2006 WL 3298911, at *4 ("[T]he burden on the legitimate privacy interests of the non-party . . . arrestees can be minimized by an 'attorneys'-eyes-only' designation.").

proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that the request is structured to cover only material so needed." *Ruther v. Boyle*, 879 F. Supp. 247, 250 (E.D.N.Y. 1995).

"In determining whether disclosure of information regarding the grand jury's proceedings is appropriate, courts weigh the need for disclosure against the public interest in maintaining secrecy over such proceedings." *U.S. v. Woodberry*, 546 F. Supp. 3d 180, 190 (E.D.N.Y. 2021). The Supreme Court has articulated the following considerations for a court to weigh in balancing the need for disclosure against the need for continued secrecy:

> (1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil Co. of Ca. v. Petrol Stops Northwest,* 441 U.S. 211, 219 n. 10 (1979) (internal quotation omitted). "In particular, the Court has emphasized that secrecy in the grand jury context serves to encourage witnesses to testify freely, without fear of retaliation." *Anilao,* 918 F. Supp. 2d at 172–74 (E.D.N.Y.2013).

"Court[s] [are] imbued with the power to make an independent determination of whether the Grand Jury materials requested should be released and, if so, the degree to which and the manner by which they should be disclosed." *Id*. at 172. Courts

in this Circuit have consistently held that "[s]peculation and surmise as to what occurred before the grand jury is not a substitute for fact." *Woodberry*, 546 F. Supp. 3d at 190 (citations omitted); *see also Bruno v. Coveny*, No. 18-CV-1522 (AMD), 2020 WL 1812460 at *2 (E.D.N.Y. Apr. 9, 2020) (mere "speculation" about misconduct "does not justify unsealing grand jury materials"). "The burden of demonstrating that the need for disclosure is greater than the public interest in secrecy is a heavy one, and it rests with the party seeking disclosure." *Thomas v. Mason*, No. 1:17-CV-626 GTS DJS, 2018 WL 11247055, at *3 n. 3 (N.D.N.Y. June 25, 2018).

### B. <u>Unsealing Grand Jury Materials is not Warranted</u>

In this case, Plaintiff asks the Court to "order the unsealing of the grand jury materials from the . . . cases where convictions were reversed on appeal due to prosecutorial misconduct" (Dkt. 49 at 4-5), specifically seeking "limited, nonpublic [unsealing] of grand jury testimony and associated exhibits under a confidentiality order" (Dkt. 49 at 14).

Plaintiff argues he has a particularized need for the grand jury materials because they may help prove his claim by showing: (1) prosecutors failed to turn over exculpatory evidence, thus suggesting the MCDAO was "indifferent to such disclosure obligations" (Dkt. 49 at 6); (2) prosecutors elicited perjured testimony from the alleged victim (*id.*); (3) prosecutors inappropriately withheld legal guidance from the grand jury in the seven overturned-convictions cases thus displaying a "custom of disregarding defendants' rights" (*id.* at 7); (4) prosecutors introduced evidence known to be unlawful and the prosecutor's office encouraged such a practice (*id.*); (5) patterns

of intimidation or coercion of false testimony from witnesses which would thus strengthen Plaintiff's argument that "MCDAO had a policy or practice of ignoring such coercion" (*id.*); and (6) a deeply ingrained culture of nondisclosure in the prosecutor's office (*id.* at 8). Plaintiff also contends that review of grand jury materials is critical for his deposing the prosecutors responsible for the overturned convictions, because "grand jury presentation is a critical part of the prosecution . . . [and] [t]o properly prepare for deposition and fully understand the case files . . . a review of the grand jury materials is necessary." (Dkt. 49 at 4, 8).

In opposition, Defendant argues Plaintiff has no particularized need for grand jury materials because there is no allegation of grand jury impropriety in this case or any of the Cases. (Dkt. 52 at 5). Defendant further points out that six of the cases for which Plaintiff seeks grand jury materials involve summation misconduct and Plaintiff has failed to "explain any connection between improper summation and the grand jury records sought." (Dkt. 52 at 4)

Having carefully considered the parties' arguments, the Court concludes Plaintiff has not met his burden of establishing a particularized need for the grand jury materials sought that outweighs the "time honored policy and strong public interest in maintaining grand jury secrecy." *Ruther,* 879 F. Supp. at 250 (internal quotation omitted); *see also Anilao*, 918 F. Supp. 2d at 173 n.5. In arguing for grand jury materials, Plaintiff cites particularly *Presha*, *Fisher*, and *Flowers*, which involved Assistant District Attorney Kristina Karle and summation misconduct. (Dkt. 49 at 10-11). Plaintiff theorizes that "[i]f the [MCDAO][] did not intervene after

numerous public rebukes [in the Cases], there is a substantial likelihood that misconduct . . . could have also occurred at the indictment stage." (Dkt. 49 at 12). This argument is the kind of "[s]peculation and surmise" that has consistently been determined not to justify disclosure of grand jury materials. *U.S. v. Silver*, 103 F. Supp. 3d 370, 381 (S.D.N.Y. 2015) (citation omitted). Moreover, even if the grand jury materials "reveal[ed] how Karle or other ADAs handled evidence and testimony when free from the scrutiny of a public courtroom" (Dkt. 49 at 12), it is purely speculative that this revelation would somehow be relevant to and supportive of Plaintiff's claims.

Further, Plaintiff cannot successfully argue that his motion for grand jury materials "is structured to cover only material . . . needed," because none of the Cases involve grand jury impropriety. *See Ruther,* 879 F. Supp. at 250 (citing *Douglas Oil Co.,* 441 U.S. at 222). While the summation misconduct discussed in the Cases could be indicative of a pervasive and unconstitutional failure to discipline by the MCDAO, and thus be relevant to Plaintiff's claim, the connection between the requested grand jury materials and Plaintiff's claim is far more tenuous. Plaintiff's guess that the materials could show prosecutors elicited perjured testimony or inappropriately "withheld legal guidance" from the grand jury, thus displaying a "custom of disregarding defendants' rights" (Dkt. 49 at 7), is not supported by the written decisions in the Cases, which discuss no such conduct during grand jury proceedings. Plaintiff also does not present any factual basis to conclude that the MCDAO engaged in misconduct in connection with the grand jury proceedings in his overturned

criminal case. Again, this kind of speculation and surmise is insufficient to invade the secrecy of grand jury proceedings.

For all these reasons, Plaintiff has not shown that the Court should order the unsealing of the grand jury materials in the Cases. Thus, Defendant's request for an order to disclose grand jury proceedings is denied.

## CONCLUSION

For the reasons set forth above, the Court grants in part Plaintiff's motion to unseal (Dkt. 38) pursuant to Federal Rule of Civil Procedure 37. Defendant is ordered to produce the case records related to *People v. Fisher*, 18 N.Y.3d 964 (2012), *People v. Gibson*, 134 A.D.3d 1512 (4th Dep't 2015), *People v. Jones*, 134 A.D.3d 1588 (4th Dep't 2015), *People v. Griffin*, 125 A.D.3d 1509 (4th Dep't 2015), and *People v. Presha*, 83 A.D.3d 1406 (4th Dep't 2011). These records shall be unsealed, marked "Highly Confidential" in accordance with the Stipulated Protective Order, and disclosed to Plaintiff's counsel no later than 30 days from entry of this Decision and Order. Plaintiff's request to unseal grand jury materials associated with the Cases listed in his motion is denied.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         July 10, 2025